# United States Court of Appeals

## For the First Circuit

No. 02-1542

STEVEN ROSENBERG,

Plaintiff, Appellant,

v.

CITY OF EVERETT and DAVID RAGUCCI,
in his official capacity as Mayor of the
City of Everett and individually,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Shannon Liss-Riordan, with whom Harold L. Lichten and Pyle, Rome, Lichten & Ehrenberg, P.C. were on brief, for appellant.
Alan D. Rose, with whom Alan D. Rose, Jr. and Rose & Associates were on brief, for appellees.

May 1, 2003

**TORRUELLA**, <u>Circuit Judge</u>.  In January 1998, plaintiff-appellant Steven Rosenberg was terminated from his position as Director[1] of Everett Community Television ("ECTV") after more than eleven years at the station.  Rosenberg believes he was fired because of his handling of station programs concerning the mayoral election of 1997.  He brought suit against defendants-appellees City of Everett and Mayor David Ragucci, claiming that Rosenberg's firing was in breach of public policy and in violation of the First Amendment's prohibition against political discrimination.  The district court dismissed Rosenberg's public policy claim and later granted appellees' motion for summary judgment on his political discrimination claim.  After careful review, we affirm.

## I.  Facts

ECTV, which produces programming for three local cable channels, is funded entirely by Time Warner Cable Company; none of its budget comes from City funds.  The station is administered through City government.  Rosenberg began working for ECTV in 1986 and consistently earned high reviews.  At the time of his firing, he oversaw and directed public access cable programming in Everett and was responsible for the daily administrative, technical, and programming operations of ECTV.

---

[1]  Rosenberg's position was also referred to as "Cable Project Manager," "Cable Manager," and "Executive Director."

Throughout Rosenberg's employment, he reported directly to Mayor John McCarthy and worked with the Mayor on a daily basis. Among other duties as Director of ECTV, Rosenberg produced candidate forums and election coverage. Prior to the 1997 elections, Paul Schlosberg, an independent producer in Everett, offered to organize a candidates' forum entitled "Decision '97" and Rosenberg agreed to assist with its production and broadcast. By letter dated September 23, 1997, Schlosberg invited each candidate to the ECTV studio to record a videotape before October 3, 1997. Those candidates received minor assistance in producing the tape from the ECTV staff. Alternatively, candidates could submit their own videotape before the deadline. The station planned to begin airing candidates' segments on or around October 16, 1997.

Mayoral candidate Ragucci, a City Alderman, submitted his tape before the deadline. Mayor McCarthy requested an extension because his schedule prevented him from preparing the video prior to October 3, 1997. Rosenberg granted an extension to McCarthy (as well as to all other candidates who requested one), and McCarthy recorded his video at ECTV on or about October 9, 1997. This was before any candidate's segment had appeared on television.

Ragucci was furious with Rosenberg for permitting McCarthy to submit his videotape after October 3. Ragucci accused Rosenberg of applying two sets of rules -- one to Mayor McCarthy and one to the rest of the candidates. Rosenberg attempted to

defend his actions by telling Ragucci that he and the television channel were apolitical. At the next Board of Aldermen meeting, which was broadcast on ECTV, the Board reprimanded Rosenberg for his handling of "Decision '97."

On November 4, 1997, Ragucci was elected Mayor of the City of Everett. On December 12, 1997, Mayor-elect Ragucci terminated Rosenberg, effective January 6, 1998. Ragucci did not identify a reason for the termination. Schlosberg applied for the Director's position but was given a lower position because, he was told, Ragucci did not perceive that Schlosberg had shown enough support for his campaign before the election. Rosenberg's position was filled by Geralyn Reardon, who had served as Ragucci's campaign communications director. Ragucci removed a number of other long-term employees in Everett and replaced them with his political supporters and relatives.

On August 12, 1999, Rosenberg initiated the current litigation. His public policy claim was dismissed on April 3, 2000, and summary judgment was granted in favor of the defendants on April 22, 2002. This timely appeal followed.

## II. Discussion

### A. Public Policy

Rosenberg challenges the district court's dismissal of his public policy claim. We review the dismissal de novo, accepting all well-pleaded allegations as true and affording

-4-

Rosenberg reasonable inferences in his favor. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Dismissal is proper if the complaint presents no set of facts justifying relief. Fed. R. Civ. P. 12(b)(6) (2003).

Rosenberg was an at will employee. As such, he was subject to termination for any reason or for no reason at all. Upton v. JWP Businessland, 425 Mass. 756, 757 (1997). There is an exception to this general rule however -- an employee may not be "terminated for a reason that violates a clearly established public policy." Id. Public policy prevents terminating an employee for doing what the law requires. Id.

Rosenberg claims that McCarthy's request for an extension was simply a request for an equal opportunity that Rosenberg was legally obligated to permit. See 47 U.S.C. § 315 (2003). He argues that because he was fired for granting this extension, his termination is in violation of public policy. Appellees respond that Rosenberg was not required to grant McCarthy an extension and that doing so arguably violated the law that prohibits discriminating against candidates. See 47 C.F.R. 76.205(e) ("[N]o system shall . . . make or give any preference to any candidate for public office . . . .").

Federal Communications Commission ("FCC") regulations provide: "If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting

station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station . . . ."[2]  47 U.S.C. § 315(a).  As used in the statute, "licensee" refers, inter alia, to the operator of a community television station, in this case Rosenberg.  Id. at § 315(c).  This equal time doctrine has been described as a "contingent right of access"; it does not require a licensee to offer time to any candidate, but once a candidate is permitted to use the station, the station must provide other candidates "with equal time at an equal rate, at a comparable hour of the day, and with a similar format for presentation."  Kennedy for President Comm. v. FCC, 636 F.2d 432, 437 n.33, 438 (D.C. Cir. 1980).  The purpose of the equal time doctrine is to facilitate political debate by qualified candidates. Farmers Educational & Cooperative Unit v. WDAY, Inc., 360 U.S. 525, 529 (1959).  A candidate seeking equal opportunity must request it no more than seven days after another candidate's broadcast.  47 C.F.R. § 76.205(c) (2003).  Candidates who feel they have not received equal time may file a complaint with the FCC.

The regulations seem to assume a situation whereby one candidate purchases airtime or is offered free airtime, and an opposing candidate seeks (within seven days of the broadcast) to purchase or secure without charge the same amount of airtime.  The

---

[2]  A similar state law is guided by the FCC rules and regulations. See Mass. Gen. Laws ch. 166A, § 5(j) (2003).

-6-

laws forbid a licensee from influencing an election by only permitting one viewpoint to be heard. Here, however, ECTV established a forum and invited all candidates to participate. All candidates were offered use of the station to facilitate taping, and a deadline was chosen to allow ECTV time to prepare the documents for airing.

ECTV complied with the statute by offering equal time to all candidates -- every candidate had the same opportunity to film and submit a tape. The station was legally obligated to honor that equal opportunity by accepting all tapes submitted before the deadline. But a station is not prohibited from establishing a reasonable, neutral deadline, as ECTV did here. In opening its station to all candidates, ECTV guaranteed that the public had access to all candidate's views, provided that the candidate met the clearly established deadline.

Rosenberg's decision to offer McCarthy an extension did not prejudice Ragucci, and was done in good faith.[3] However, neither appellant's brief nor our own research reveal any case law suggesting that the extension was required by law. Thus, even if

---

[3] In a subsequent broadcast that had been planned as an opportunity for mayoral candidates to speak to the community in an uninterrupted forum, Rosenberg granted Ragucci's request to submit a taped thirty-minute presentation, rather than tape an unedited segment at the station. This belies appellees' claim that Rosenberg was favoring McCarthy over Ragucci.

Rosenberg was fired because of this extension, he is not protected by the public policy exception to at will employment.

## B.  Political Discrimination

Rosenberg brought suit for damages under 42 U.S.C. § 1983 alleging that his First Amendment rights were violated when he was terminated due to his perceived lack of political loyalty for the incoming mayor.  The district court granted summary judgment in favor of the City and Mayor Ragucci on this claim of political discrimination.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2003).  We review the summary judgment decision de novo, construing the record in the light most favorable to Rosenberg and resolving all reasonable inferences in his favor.  Rodríguez v. Smithkline Beecham, 224 F.3d 1, 5 (1st Cir. 2000).  We may affirm the decision on any grounds revealed by the record.  Id.

There are separate standards for imposing liability against government officials and the municipality.  Under the doctrine of qualified immunity, "[g]overnment officials are not liable for monetary damages in § 1983 suits unless their actions violate 'clearly established constitutional or statutory rights of

which a reasonable person would have known.'" <u>Valiente</u> v. <u>Rivera</u>, 966 F.2d 21, 23 (1st Cir. 1992) (quoting <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)). In contrast, the City can be liable only if (1) a constitutional harm occurred, and (2) the harm was caused by the "'execution of a government's policy or custom.'" <u>De Feliciano</u> v. <u>De Jesús</u>, 873 F.3d 447, 449 (1st Cir. 1989) (quoting <u>Monell</u> v. <u>NY City Dept. of Social Servs.</u>, 436 U.S. 658, 694 (1978)). As we determine below, there was no constitutional harm in this case, and therefore, there can be no liability.

Although appellees have offered other reasons for Rosenberg's termination, we assume for this part that Rosenberg has shown that Ragucci terminated him because of a perceived lack of political support. In general, a public employee[4] may not be fired solely because of his political affiliation. <u>Branti</u> v. <u>Finkel</u>, 445 U.S. 507, 517 (1980); <u>Elrod</u> v. <u>Burns</u>, 427 U.S. 347, 373 (1976). Dismissal based on political patronage is permissible, however, if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." <u>Jiménez Fuentes</u> v. <u>Torres Gaztambide</u>, 807 F.2d 236, 240 (1st Cir. 1986) (en banc) (quoting <u>Branti</u>, 445 U.S. at 518). Political discharge is permitted to give a new administration an opportunity to fulfill expectations by

_____

[4] Although ECTV is funded by a private cable company, the parties agree that Rosenberg, who was hired and fired by the City, is a City employee for purposes of this case.

surrounding itself with "agency leaders and top subordinates responsive to the elected officials' goals." Flynn v. City of Boston, 140 F.3d 42, 46 (1st Cir. 1998). Whether or not a position is subject to political discharge is a legal question for the courts. Id. at 44. Party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,'" and (2) "'the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure.'" Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 61-62 (1st Cir. 1997) (quoting Jiménez Fuentes, 807 F.2d at 241-42).

First, we find that there was room for political disagreement regarding decisions made by ECTV. Local governments are held accountable for the services they provide, and ECTV unquestionably provided an important community service.

> Elections often turn on the success or failure of the incumbent to provide these services, and, as campaigns develop, the opposing sides put forth varying proposals about how best to provide services. . . . [T]here is clearly room for principled disagreement in the development and implementation of plans to achieve that goal.

O'Connor, 994 F.2d at 910 (quoting Tomczak v. City of Chicago, 765 F.2d 622, 641 (7th Cir. 1985)). ECTV addressed customer concerns regarding cable television, and it controlled programming on three stations. The programs often covered the local government and issues of importance to the community. The station unquestionably "handled matter potentially subject to partisan political differences." Id. (quotation omitted).

Second, we find that the Director's position at ECTV resembles those positions for which political affiliation is an appropriate requirement. In determining the second factor, we consider "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." O'Connor v. Steeves, 994 F.2d 905, 910 (1st Cir. 1993) (quotation omitted). Among other duties, the Director of ECTV is responsible for negotiating and overseeing the contract with the cable company; working as a liaison between the cable company and the City in settling customer disputes; maintaining open dialogue with the community; and overseeing the budget, programming, and staffing of the station. The Director establishes and implements all policy for the station and exercises control over all ECTV employees. Although Rosenberg claims that he and ECTV were apolitical, this

-11-

does not immunize him from political firing because he was still involved in policymaking.  See Flynn, 140 F.3d at 46.

The Director reports directly to the Mayor, and speaks on the City's behalf in negotiations with the cable company. Rosenberg's "responsibilities meant that policy disagreements with his politically appointed supervisor could lead to less effective implementation of policy goals."  Flynn, 140 F.3d at 45.  The functions of the Director of ECTV thus include many of the factors present in other positions for which we found political patronage to be a valid requirement.  See, e.g., Duriex-Gauthier v. López-Nieves, 274 F.3d 4, 10 (1st Cir. 2001) (political dismissal upheld where employee was "responsible for the planning and supervision of all the personnel activities," analyzing organizational problems and acting as a liaison with a higher office); Jiménez Fuentes, 807 F.2d at 243-46 (finding position to be one of policymaking where employee "proposes, establishes, and implements public policy, is privy to confidential information, and acts as a spokesperson for the agency"); see also Flynn, 140 F.3d at 45 (noting that dismissal on political ground has been upheld in this circuit "where the plaintiff merely represented the agency's policy positions to other entities or to the public").

Rosenberg mounts a slightly different First Amendment argument, asserting not that he should be free to express his political beliefs, but that the public interest is served by media

independence.  Rosenberg asserts that his duties are more aptly described as producing independent and unbiased coverage of City news and events, and that the public benefits from a public access cable station that is not beholden to City government.  We refuse to take such a narrow view of Rosenberg's job duties.  A court considers the duties inherent to the position in question.  <u>Roldán-Plumey</u>, 115 F.3d at 62.  The job description provided by appellees, as well as Rosenberg's deposition testimony, reveal that the Director is responsible for many policy-related duties and is not simply charged with creating unbiased programming.

Rosenberg relies on <u>Gierbolini Colón</u> v. <u>Aponte Roque</u>, 666 F. Supp. 334 (D.P.R. 1987), <u>aff'd</u>, 848 F.2d 331 (1st Cir. 1988), to support his argument that the First Amendment does not permit political loyalty to be a job requirement for the head of a government-run media broadcasting station.  Although the district court in <u>Gierbolini Colón</u> stated that "[d]emocracy requires a robust and wide open discussion of all positions on the great issues of our day, and it is too important a task to let the government and the politicians who run it decide how and when those discussions may be heard, all at taxpayers' expense," 666 F. Supp. at 339, we affirmed the case on different grounds, and did not address the issue of whether political affiliation was an appropriate qualification for the position of radio station Director.  <u>Gierbolini Colón</u>, 848 F.2d at 333 n.3.  Rosenberg's case

is critically different because the Director's position in Gierbolini Colón was a protected civil service position under the laws of Puerto Rico, terminable only for cause. Id. ("Puerto Rico itself, therefore, does not treat the position as one where a particular administration is entitled to insist on appointing someone with whom it has special affinity."). Here, Rosenberg's position was not protected by the legislature, so Gierbolini Colón is inapposite.

When we "weigh all relevant factors and make a common sense judgment in light of the fundamental purpose to be served," we find that Rosenberg's position as Director of ECTV was one for which political affiliation is an appropriate requirement for effective performance. Jiménez Fuentes, 807 F.2d at 242. As such, Rosenberg's termination by the incoming mayor was permissible. Because there was no violation of Rosenberg's constitutional rights, neither Ragucci nor the City is liable under the First Amendment.

## III. Conclusion

The decision of the district court is **<u>affirmed</u>**.