# United States Court of Appeals

## For the First Circuit

No. 02-1713

WILLARD T. STEWART,

Plaintiff, Appellant,

v.

DUTRA CONSTRUCTION COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella, Lynch and Howard,
Circuit Judges.

David B. Kaplan, with whom Thomas M. Bond and The Kaplan/Bond Group were on brief, for appellant.
Frederick E. Connelly, Jr., with whom Peabody & Arnold LLP was on brief, for appellee.

September 4, 2003

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiff-Appellant Willard T. Stewart appeals a decision from the District of Massachusetts granting summary judgment to Defendant-Appellee Dutra Construction Company ("Dutra"), Stewart's employer and the owner of the vessel on which Stewart was injured. Following our decision in <u>Morehead</u> v. <u>Atkinson-Kiewit</u>, 97 F.3d 603 (1st Cir. 1996) (en banc), we affirm the district court's grant of summary judgment.

## I.

Dutra is a dredging company hired by the Commonwealth of Massachusetts to perform drilling, blasting, and dredging work for an immersed tube tunnel under Boston Harbor, now known as the "Ted Williams Tunnel." Dutra used the dredge SUPER SCOOP and the Scow 4 for this work. The SUPER SCOOP is a typical dredge with a clamshell bucket; its function was to move through Boston Harbor, from East Boston to South Boston, digging the ocean bottom as it moved. The Scow 4 was used in conjunction with the SUPER SCOOP. It would be brought alongside the dredge and filled with sediment and dredging material that had been scooped from the ocean bottom by the SUPER SCOOP. Once filled, the Scow 4 would then transport the material out to sea for dumping.

In 1991, Dutra hired Willard Stewart, a marine engineer, to maintain the mechanical systems of the SUPER SCOOP. Stewart spent the majority of his time aboard the SUPER SCOOP, though occasionally he was required to perform maintenance tasks aboard

-2-

the Scow 4.  One such task occurred when the scow's engine malfunctioned, sometime in the middle of July, 1993.  With the scow's engine out of commission, the scow doors could not be opened or closed; as a result, dredging operations came to a temporary halt.  To repair the scow, Dutra hired Southworth Milton, an independent contractor, which sent its representative, Timothy Angell, to repair the engine.  Dutra also arranged for several of its employees, including Stewart, to assist in the repair process.  Eventually it was determined that the engine was beyond repair and would need to be replaced.

Access to the engine was via a hatch on the Scow 4.  The old engine was removed, and a new engine was lowered into the scow by means of a crane.  At some point it was determined that a protective railing guarding the hatch obstructed the removal of the old engine.  The protective railing was subsequently removed.

On July 15, 1993, Angell and Stewart were working aboard the Scow 4.  Angell was working in the engine area, and had been for two or three days.  Stewart was kneeling over the unguarded open hatch, about ten feet above the engine area, feeding wires through the hatch.  While Stewart was precariously perched above the hatch, the SUPER SCOOP's crew moved the scow. At some point in the moving process, there was a jolt, and Stewart plummeted headfirst to a deck below.  He was seriously injured.

Stewart filed a complaint for damages under the Jones Act, 46 U.S.C. § 688. The complaint was amended to add an alternative count for vessel negligence pursuant to § 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., authorizing covered employees to sue the vessel as a third party for injury caused by the negligence of a vessel. Stewart's Jones Act and LHWCA claims were predicated upon three alleged acts of negligence. Stewart argues that Dutra was negligent in: (1) causing the scow to crash suddenly into the SUPER SCOOP; (2) failing to sound a warning blast prior to moving the scow; and (3) creating an unsafe work environment by removing the protective railing around the hatch.

Dutra responded with motions for summary judgment on both counts. Ruling first on the Jones Act count, the district court concluded that because the SUPER SCOOP was not a "vessel," as that term is defined by the Jones Act, Dutra was entitled to an award of summary judgment. Stewart appealed that decision, and we affirmed, concluding that the SUPER SCOOP is not "a 'vessel in navigation' as that term has developed in the jurisprudence of the Jones Act." Stewart v. Dutra Constr. Co., 230 F.3d 461, 469 (1st Cir. 2000) (Stewart I).

Following our decision in Stewart I, Dutra renewed its motion for summary judgment on the LHWCA claim. The district court granted the motion, and stated only that it was granting Dutra's

-4-

motion for summary judgment based on the application of <u>Morehead</u> v. <u>Atkinson-Kiewit</u>, 97 F.3d 603 (1st Cir. 1996) (en banc). Stewart now appeals that decision.

## II.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Rosenberg</u> v. <u>City of Everett</u>, 328 F.3d 12, 17 (1st Cir. 2003) (<u>citing</u> Fed. R. Civ. P. 56(c) (2003)). We review the district court's award of summary judgment de novo, construing the record in the light most favorable to Stewart and resolving all reasonable inferences in his favor. <u>Id.</u>

### A. "Vessel" Status

Unlike the <u>Stewart I</u> Court, we need not labor over the "vessel" status of the SUPER SCOOP or scow for purposes of the LHWCA. Although the LHWCA permits an employee to sue in negligence only in the event of an injury caused by the negligence of a vessel, 33 U.S.C. § 905 (b), the LHWCA's definition of "vessel" is "significantly more inclusive than that used for evaluating seaman status under the Jones Act." <u>Morehead</u>, 97 F.3d at 607. Accordingly, Dutra has conceded that for LHWCA purposes, the SUPER SCOOP and Scow 4 are "vessels."

-5-

## B.  Dual Capacity Cases Under the LHWCA

The LHWCA is a comprehensive worker's compensation system which holds employers liable for compensating covered employees injured in the course of their employment, regardless of fault.[1] 33 U.S.C. § 904.  The statutory no-fault compensation payments provided by the LHWCA are considered "exclusive and in place of all other liability of such employer to the employee."  Id. § 905(a).  Therefore, employees covered by the LHWCA are statutorily  barred from suing their employers for injuries incurred in the course of their employment.  However, while the compensation scheme is the employee's exclusive remedy regarding his employer, the employee is still free to sue the vessel owner as a third party if his injury was caused by the negligence of the vessel.

Where, as here, the same entity is both employer and vessel owner, the question becomes whether the dual capacity defendant's alleged acts of negligence were committed in its capacity qua employer (for which it is immune from tort liability under § 905(a)) or qua vessel owner (for which it may be held liable under § 905(b)).  See Morehead, 97 F.3d at 610.  Though dual capacity cases are by nature complex, we fortunately proceed under the guidance of Morehead, which has already addressed most of the dual capacity issues raised by the appellants.

---

[1]  For a thorough history of the LHWCA, its amendments, and case law, see our en banc opinion in Morehead, 97 F.3d at 607-13.

## 1. **Morehead** v. **Atkinson-Kiewit**

In Morehead, the en banc Court considered a dual capacity claim very similar to this case. Morehead was employed as a carpenter on a bridge construction project and a line-handler on a barge used for the project. Id. at 605. Atkinson-Kiewit ("A-K"), the construction contractor, was not only Morehead's employer, but, as charterer of the barge, was also the vessel owner. Id. at 606-07 (noting that under 33 U.S.C. § 902(21) bare-boat charterers such as A-K were liable as vessel owners under § 905(b)). While Morehead was handling a heavy line on the barge deck, he stepped backwards into an open hatch and was injured. The hatch had negligently been left open by a co-worker, who, like Morehead, had been hired both for carpenter and scowman duties. Id. at 614.

The plaintiff argued that A-K violated vessel duties owed to Morehead because at the time he was injured "A-K as vessel (rather than A-K as employer) [had] 'active control' over the open hatch." Id. That is, because no construction purpose (and therefore no employment purpose) was being pursued at the time of his injury, the hatch was within A-K's control in its capacity as a vessel owner, not an employer.[2] Id.

_____

[2] In support of this claim, Morehead emphasized that

> the barges were set alongside the pier and were not carrying construction equipment . . . . [and] A-K had instructed [the employee who left the hatch open] to open the hatch out so that A-K could exercise what Morehead argues

We rejected this argument, and found instead that both Morehead and the employee who left the hatch open "had been hired both for carpenter and scowman duties." Id. We noted that both employees "were expected as part of their employment duties to lend a hand with supporting maritime chores as well as to pursue their particular construction trade." Id. Consequently, we agreed that A-K's "active control" over the open hatch was "therefore attributable to it as employer, not as vessel, since the hatch was opened . . . and the line thrown in the course of harbor worker duties which both men were regularly hired to perform." Id. Since both men were acting as employees, rather than as A-K's agent in a distinct shipowner's capacity, we found that any negligence on A-K's part was committed in its capacity qua employer. Id. at 616. As a result, Morehead's suit was barred under § 905(a). Id.

In reaching this conclusion, we expressly rejected any dual capacity approach that would focus on the specific activities of the employee to determine whether the employee's actions were benefitting the defendant in its capacity as vessel owner or employer at the time the employee was injured. Id. at 614-15. That is, we rejected any "functional" approach which would lead us

---

was a vessel function -- having a marine surveyor examine the barge before returning it to the owner.

Id. at 614.

to question whether an accident occurred "in furtherance of a 'construction' objective or a 'vessel' objective." Id. We stated:

> A "functional" interpretation, hinging the type of liability on the nature and purpose of the duties being performed by covered employees at any given time, would increase uncertainty and the frequency of disputes over the scope of the coverage. As [the two employees involved in the accidents] employment contemplated that they would alternate frequently between construction and linehandling, a single overall classification of their duties is most appropriate for determining the types of remedies available.

Id. at 615. Because the "functional" approach increased uncertainty and contravened the Congressional intent behind the LHWCA by expanding vessel owner liability, we concluded that the dual capacity vessel could be held liable under section 905(b) only to the extent that it breached its duties of care while acting in its capacity as a vessel. Id.

## III.

Stewart makes two arguments in support of his claim that Dutra's allegedly negligent actions occurred in its capacity as vessel owner, rather than in its capacity as employer. First, Stewart claims because the scow had been taken out of service and had done no dredging work for two days prior to the accident, the work Stewart was performing when he was injured can only be considered "vessel" work. Second, Stewart avers that Dutra remained in "actual control" of the area where he was injured because the engine and hatch area of the vessel were under the

-9-

"actual control" of Timothy Angell, an independent maritime agent working distinctly on behalf of the vessel. Stewart contends that because Dutra created the negligent condition that was the proximate cause of Stewart's injuries through its agent as vessel owner, Dutra breached its vessel duties to Stewart and is liable under § 905(b). After careful consideration, we conclude that the former argument is precisely the sort of "functional" analysis precluded by Morehead; the latter we reject as procedurally defaulted.

## A.  Stewart's Functional Dual capacity Analysis

Stewart's first argument is essentially that all injuries occurring incident to repair work on a vessel implicate the defendant's capacity as a vessel owner rather than as an employer. According to Stewart, it is significant that the scow had been taken out of service and had done no dredging for two days prior to the accident. Once the crew (Stewart included) was diverted from their ordinary dredging activities to work on repair-related activities, the work they performed could only be considered "vessel" work, not "dredging" work. To support this argument, Stewart argues by analogy that "[i]f Dutra dredging company had chartered the Scow 4 from another entity, it would have returned the Scow 4 to said entity to replace the engine. A dredging contractor would not purchase a new engine in a vessel it did not own." Moreover, the Southworth Milton employee hired to repair the

engine had nothing to do with the dredging operation.  As a result, Stewart maintains that the repair operations that led to his injury furthered a distinctly "vessel" objective.

This argument does not differ from the "functional" analysis rejected by the Morehead Court in any significant way.  In Morehead, the plaintiff argued that the purpose of leaving the hatch open furthered the vessel's purposes, and did not further any employment purpose.  Rejecting this argument, we noted that the LHWCA had been amended to "provide employees and employers with a greater degree of certainty as to the coverage in effect."  Id. at 615.  Accordingly, the legislative history of the 1984 Amendments documents the legislature's concerns about predicating coverage upon the nature of the task the employee was performing when injured:

> The situation in which a worker may be covered at one time, and not covered at another, depending on the nature of the work which the worker is performing at the time of the injury must be avoided since such a result would be enormously destabilizing and would thus defeat one of the essential purposes of the amendments.

Id. (quoting H.R. Rep. No. 98-570(I), 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 2734, 2736-37).

Eschewing this approach, we noted that "as is typical in the case of harbor workers . . . [employees] were expected as part of their employment duties to lend a hand with supporting maritime chores as well as to pursue their particular construction trade."

-11-

Id. at 614. Since both Morehead and the employee who left the hatch open were performing tasks that were contemplated by the terms of their employment, we deemed that the defendant was liable only in its capacity as employer.

Like Morehead, Stewart was performing the work he was hired to do. Although Stewart spent the majority of his time aboard the SUPER SCOOP, he, like the other employees on the SUPER SCOOP, was hired to perform tasks relating both to dredging and to occasional maintenance work on both vessels. His job contemplated performing maintenance tasks on a variety of engines and machinery related to the dredging process, including engines used for the dredging-crane, scow engines, and deck winches used for moving the dredge. He was therefore performing his regular duties as an engineer on a dredging operation.

Stewart has not cited any cases to the effect that major repair work on a vessel is inherently vessel-oriented, and not employment-oriented work. Given Morehead's explicit rejection of a "functional" approach to dual capacity cases and Congress's plain intention to avoid creating uncertainty as to actions covered by the LHWCA, we are compelled to reject this argument.

## B. Dutra's "Active Control" Duty

Stewart next argues that Dutra breached its vessel duties to him by remaining in active control over, and creating an unsafe condition in, the area where he was injured. This argument is

-12-

based on vessel duties established by the Supreme Court in <u>Scindia Steam Navigation Co.</u> v. <u>De los Santos</u>, 451 U.S. 156, 175-76 (1981).

In <u>Morehead</u>, we concluded that the owner of a dual capacity vessel could be held liable under § 905(b) where it breached its <u>Scindia</u> duties while acting in its capacity as vessel. <u>Morehead</u>, 97 F.3d at 615. The <u>Scindia</u> Court articulated three types of duties a vessel owner owed to stevedoring employees. First, shipowners have a duty to turn over "the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." <u>Scindia</u>, 451 U.S. at 167. This duty, commonly referred to as the "turnover duty," includes a duty to warn the stevedore of latent dangers that could not be discovered through the exercise of reasonable care.

Second, once stevedoring operations have begun, the vessel owner will be liable if it "actively involves itself in the cargo operations and negligently injures a longshoreman." <u>Id.</u> That is, if the vessel owner maintains active control over an area or operation, the vessel is liable for any injuries it negligently inflicts incident to the area or operation. <u>Id.</u>

Finally, a shipowner has a duty to intervene to protect stevedoring workers if it acquires actual knowledge that the vessel or equipment pose a danger and the stevedore is not exercising

-13-

reasonable care to protect its employees from that risk.  Id. at 175-76.

According to Stewart, both the area where the incident occurred and the repair activities that were taking place there were under the control of Angell, who was acting as a separate maritime agent specifically for the vessel.  The presence of Angell, Stewart argues, distinguishes this case from Morehead because in that case, we noted that "[t]he allegedly negligent conditions (the open hatch and the absence of warnings) were not attributable to the errors of separate maritime agents acting specifically for the vessel."  Morehead, 97 F.3d at 614.  Stewart therefore contends that through Angell, Dutra as vessel owner knew or should have been aware of the danger created by removing the protective railings around the hatch; Dutra is therefore liable in its capacity as vessel owner for its alleged breach of Scindia's "active control" duty.

We decline to consider whether Dutra's actions and the presence of Angell in the engine room warrant consideration under Scindia.  Stewart's contention that Dutra retained active control over the engine/hatch area is procedurally defaulted by his failure to raise the issue before the district court.  "The law in this circuit is crystalline: a litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal."  Boston Beer Co. Ltd.

P'ship. v. <u>Slesar Bros. Brewing Co.</u>, 9 F.3d 175, 180 (1st Cir. 1993). In the district court, Stewart's opposition to Dutra's motion for summary judgment made only passing mention of Timothy Angell, and at no point contended that he was a "separate maritime agent" whose presence distinguishes this case from <u>Morehead</u>. Indeed, the "active control" argument seems to have surfaced for the first time in Stewart's briefs to this Court.

In his briefs before the district court, Stewart refers to Angell as a "mechanic" working for "independent contractor," Southworth Milton. Nowhere does he make any other reference to the legal or employment status of Angell, nor does he otherwise discuss whether Angell exercised actual control over the scow or any portion thereof. These passing references do not amount to an argument that Angell was a separate maritime agent in actual control of the scow. <u>See</u> <u>DiMarco-Zappa</u> v. <u>Cabanillas</u>, 238 F.3d 25, 34 (1st Cir. 2001) ("Simply noting an argument in passing without explanation is insufficient to avoid waiver."); <u>Beaudett</u> v. <u>City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985) (appellate courts should not permit "fleeting references to preserve questions on appeal"). We therefore reject, as procedurally defaulted, Stewart's contention that Angell's activity aboard the scow distinguishes this case from <u>Morehead</u> or triggers <u>Scindia</u> liability in the form of a breach of the active control duty.

**IV.**

Our decision in <u>Morehead</u> compels us to find that Stewart's claim is barred by § 905(a) because he was injured while performing his regular duties as an engineer on a dredging operation. The district court's grant of summary judgment is affirmed.

**<u>Affirmed</u>**.