**Benito Galloza GONZALEZ, et al., Plaintiffs**

v.

**Norman E. FOY, et al., Defendants**

No. CIV. 02–1075(JP).

United States District Court, D. Puerto Rico.

Oct. 2, 2003.

Nydia González–Ortiz, Esq., Santiago & González, Yauco, for Plaintiff.

Teresa M. Seda–Ramos, Esq., Sánchez Betances & Sifre, P.S.C., San Juan, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendants' motion for summary judgment (docket No. 42), and Plaintiffs' opposition thereto. Plaintiffs have sued Defendants Norman E. Foy, Director of the Municipal Revenue Collection Center (hereinafter referred to as "CRIM", its acronym in Spanish), and Euclides Martínez, Regional Administrator

of CRIM's Aguadilla Regional Office, in their personal capacity, alleging violations of the First, Fifth and Fourteenth Amendments to the U.S. Constitution under 42 U.S.C. § 1983.

Plaintiff Benito Galloza González was Regional Administrator of the Aguadilla office of CRIM and a member of the New Progressive Party ("NPP"). He alleges that Defendant Foy asked him to resign and that he was then removed from his position and replaced by Co–Defendant Euclides González, a member of the Popular Democratic Party ("PDP"). He was then reinstated to the career position he occupied prior to the change in administration, and states that he suffered a reduction in pay in his new position. According to Plaintiff, Defendant took these actions because he was affiliated with the NPP, while Defendants were affiliated with the PDP.

Plaintiff Muñiz was Regional Administrator of the Mayaguez CRIM office. He alleges that Defendant Foy asked him to resign in February 2001. According to Defendant, he was transferred from his position and suffered a decrease in salary. He was then reinstated to the career position he occupied prior to the change in administration.

Plaintiff Galarza Pérez was Regional Administrator of the Arecibo Region for CRIM. He was told to resign from his position in February 2001. He was then reinstated to the career position he occupied prior to the change in administration.

Defendants now move for summary judgment, stating that Plaintiffs held trust positions as Regional Administrators for CRIM. Defendants state that, based on the confidential, trust nature of the position, the incoming administration requested the resignation of all CRIM regional administrators. Therefore, Defendants state that political affiliation was a proper motive for transferring Plaintiffs and that they were transferred to positions comparable to the previous career positions they occupied in accordance with Puerto Rico law. Defendants state that Plaintiffs have failed to establish a prima facie case of political discrimination. Finally, Defendants state that a parallel proceeding is underway in the Court of First Instance of Puerto Rico, San Juan Division, and that the Court should stay the instant case until the final resolution of the State Court proceedings.

## II. FINDINGS OF FACT

1. On October 1, 1981, Benito Galloza González began to work as a public transitory employee and occupied the position of Valorization Technician I.

2. On July 19, 1994, Benito Galloza González was appointed as Specialist of Valorization I.

3. On January 8, 1997, Benito Galloza González approved his probation period as Specialist of Valorization III and his status was changed to that of a regular career employee.

4. On February 25, 1997, Benito Galloza González was informed, through a letter, of this appointment as Regional Administrator of Aguadilla, effective March 1, 1997. The letter was signed by Eduardo Burgos Lebrón and advised Benito Galloza González of his right to removal to a career position because said position was a trust position.

5. On March 29, 2001, Benito Galloza González was informed, through a letter, of his removal to the last position he occupied as a career employee, Specialist of Valorization III, effective April 1, 2001. The letter

was signed by Norman E. Foy, Executive Director of CRIM.

6. On February 13, 2002, Benito Galloza González was cited to an informal Administrative Hearing that would be held on February 27, 2002, to consider the facts of his suspension of salary and employment. The letter was signed by Victoria Gómez Castro, Human Resources Director.

7. On November 18, 2002, Benito Galloza González was informed, through a letter, of an intent of demotion because he approved the concession of Article 3.30 of CRIM, in violation of CRIM regulation and violated sections number 18, 21, 27, 28, 35 and 46 pursuant to the Administrative order 94–01 of CRIM.

8. On September 1, 1983, Luis A. Galarza Pérez began to work as a regular public employee.

9. On February 16, 1988, Luis A. Galarza Pérez requested a license with salary because he was elected as candidate in the Elections of the year 1988.

10. On July 16, 1994, Luis Galarza Pérez was informed, through a letter, of his appointment as Regional Administrator of Arecibo, since July 16, 1993. The letter was signed by Eduardo Burgos Lebrón and advised Luis A. Galarza Pérez of his right to removal to a career position because said appointment is a trust appointment.

11. On March 8, 2001, Luis A. Galarza Pérez was informed through a letter of removal to the last position he occupied as a career employee, Valorization Technician II, effective March 12, 2001. This letter was signed by Norman E. Foy, Executive Director of CRIM.

12. On September 16, 1983 Plaintiff Orlando Mas Muñiz began to work as Valorization Technician I.

13. On September 1, 1995, Orlando Mas Muñiz was appointed Regional Administrator of Mayaguez, a named trust position.

14. On June 24, 1999, the State Insurance Fund upheld that Orlando Mas Muñiz suffered from an emotional condition, related to his job.

15. On April 30, 2001, Orlando Mas Muñiz was informed, through a letter, of his removal to the last position he occupied as a career employee, Specialist of Valorization IV, effective on March 1st, 2001. The letter was signed by Norman E. Foy, Executive Director of CRIM.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is

"genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514.

## IV. CONCLUSIONS OF LAW

■ In general, a public employee may not be fired solely because of his political affiliation. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rosenberg v. City of Everett,* 328 F.3d 12, 2003 WL 1989231 at *4 (1st Cir. May 1, 2003). Dismissal based on political patronage is permissible, however, if "the hiring authority can demonstrate that party affili-ation is an appropriate requirement for the effective performance of the public office involved." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir. 1986) (en banc) (*quoting Branti,* 445 U.S. at 518, 100 S.Ct. at 1287). Political discharge is permitted to give a new administration an opportunity to fulfill expectations by surrounding itself with "agency leaders and top subordinates responsive to the elected officials' goals." *Flynn v. City of Boston,* 140 F.3d 42, 46 (1st Cir.1998). Whether or not a position is subject to political discharge is a legal question for the courts. *Id.* at 44.

■ Party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,'" and (2) "'the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure.'" *Rosenberg v. City of Everett,* 328 F.3d 12, 18 (1st Cir.2003) (*quoting Jiménez Fuentes,* 807 F.2d at 241–42).

Under this analysis, Courts have found the following positions to be trust positions: (1) Assistant Director of Administration of the Puerto Rico Commercial Development Company, *see Figueroa–Rodríguez v. Aquino,* 863 F.2d 1037 (1st Cir.1988), (2) Director of Administration for the Puerto Rico Environmental Quality Board, *see Méndez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1261 (1st Cir. 1987), (3) Assistant Secretary for Special Services, Department of Agriculture, *see id.* at 1261, (4) Deputy Executive Director for Special Affairs, Aqueduct and Sewer Authority, *see id.* at 1262, (5) Regional Director of the Puerto Rico Urban Devel-

opment and Housing Corporation. *See Jiménez Fuentes,* 807 F.2d at 241.

The CRIM's chief task is to collect contributions from all the municipalities of Puerto Rico. CRIM is divided in nine regions throughout Puerto Rico. Each region is managed by a Regional Administrator. Plaintiffs were all appointed as Regional Administrators.

The Court of First Instance of Puerto Rico has already addressed the classification of Plaintiffs' position in *Orlando Mas Muñiz v. CRIM,* IDP 2001–0286(202), *Luis A. Galarza v. CRIM,* CPE 2001–0224(401), and *Benito Galloza v. CRIM,* ABCI 2001–0337. These cases involved the same Plaintiffs, Defendants, and nucleus of facts. Before the Court was the issue of whether the position of Regional Administrator was a trust position for which political affiliation is an acceptable criteria. The Puerto Rico Court concluded that, "[u]pon comparing the above determinations of fact with the applicable law, we are convinced that the position of Regional Administrator formerly occupied by the Plaintiff in this case influenced and/or implemented the public policy of CRIM and that therefore the requirement of affiliation is constitutionally valid." The Court dismissed Plaintiffs' complaints for this reason. In reaching this conclusion, the Court took into account the following factors.

1. The Regional Administrator is the highest ranking official in each of the Regional Offices.

2. The Regional Administrator is the person charged with the work plan; it is he who establishes the work methods necessary to meet the work objectives; it is he who ensures from day to day that his work plan and work method are being following to completion.

3. The Regional Administrator is custodian of the official documents of CRIM.

4. The Regional Administrator determines the necessities of his region and submits suggestions.

5. In the Certification of Plaintiffs' job, issued on April 4, 2000, the Regional Administrator is charged with the following tasks

 I. Plan, direct, supervise, and evaluate all of the administrative activities of the Center;

 II. establish the work methods that assure the accomplishment of the Regional objectives;

 III. determine the necessities of the center and offer recommendations for the solution of the same;

 IV. guard and maintain the documents of the Regional Office;

 V. determine necessities of materials and equipment and submit requests.

6. The Regional Administrator has the authority to instruct subordinates so that they make certain appraisals and to instruct them to make, or refrain from making, certain investigations.

7. The Executive Director of CRIM delegates to the Regional Administrator through rules, procedures, and/or directives, a series of decisions of importance that affect the funds that CRIM appraises for the Municipalities it represents.

8. The Regional Administrator is required to appear before a contributor who is unsatisfied with the management of different work groups in the Region. The Regional Administrator has the complete authority to resolve the contributor's problems,

including revoking the prior determination of the work group or supervisor.

9. The Regional Administrator maintains relations with the Mayors of the Municipalities that compose his region and with other government instrumentalities in order to coordinate and establish the tasks that will be seen to completion, including communications with Mayors in order to assure them that the contribution priorities that each Mayor has for his Municipality receive the necessary importance and treatment, and communications with ARPE to coordinate the appraisals of new projects and the exchange of maps and plans.

10. In making the decisions in the matters described above, the Regional Administrator acts in representation of the Municipalities that compose his region.

11. The decisions that the Regional Administrator makes can affect the valuations of the contributions of the municipalities that compose his region.

12. The Regional Administrator's job performance affects the image of CRIM in the public eye.

13. The Regional Administrators are the civil servants charged with implementing and enforcing new policies of the present administration.

The Court agrees with the analysis of the Puerto Rico Court of First Instance. Clearly, the position of Regional Administrator entails decisionmaking on issues where there is room for political disagreement on goals or their implementation. The particular responsibilities of the plaintiffs' position of Regional Administrator resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure. Therefore, the Court finds that the position of Regional Administrator of CRIM is properly classified as a trust position.

The Court is further inclined to adopt the analysis of the Puerto Rico Court based on the findings of the First Circuit Court of Appeals in the recent opinion, *Santana v. Calderón*, 342 F.3d 18 (1st Cir.2003). In *Santana v. Calderón*, the Court of Appeals reviewed this Court's finding that the Plaintiff's position of Executive Director of the Human Resources and Occupational Development Council was a career position, giving the Plaintiff a property interest in her employment. The Court of Appeals found that the classification of Plaintiffs' positions was properly analyzed under Puerto Rico Law. *See id.* Therefore, the Court of Appeals ordered this Court to certify the question as to whether Plaintiff possessed a property interest in her employment to the Puerto Rico Supreme Court. *See id.* Based on the Court of Appeal's conclusion, this Court is persuaded that deference to the Puerto Rico Courts' interpretation of Plaintiffs' job classification is proper in this case.

 While the Court has determined that Plaintiffs' positions were properly classified as trust positions, this does not end the inquiry into whether Plaintiffs possess a viable claim for political discrimination under the U.S. Constitution. Because Plaintiffs' positions were without a doubt trust positions, Defendants had a right to transfer Plaintiffs from those positions and to replace them with people from their administration. In doing so, Defendants were clearly permitted to take into account Plaintiffs' political affiliation. However,

Defendants were also required to reinstate Plaintiffs to the career positions they previously occupied before the change in administration. In Puerto Rico, every regular employee in a career position who is appointed to a trust position shall be entitled to be reinstated in a position equal or similar to the last one he or she held in the career service before the change in administration.

In 1982, the Director of the Central Office of Personnel Administration implemented the mandate of Section 1350 as follows:

> Whenever a trust employee is separated from his position and prior to rendering services in the trust service he held a career position with a regular status, he will have the absolute right to be reinstated to a position equal or similar to the last one he occupied in the career service. The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system. 3 P.R. Laws Ann. § 1350.

According to Puerto Rico law, Defendants were required to reinstate Plaintiffs to positions equal or similar to the last ones they occupied in the career service. Defendants complied with this mandate. Plaintiff Benito Galloza worked in the career position of "Valorization Technician III", up until his appointment to the trust position of "Regional Administrator." On April 1, 2001, Defendants removed Plaintiff from his trust position and reinstated him to his previous career position of "Valorization Technician III." Plaintiff Luis A. Galarza Pérez occupied the career position of "Valorization Technician II" until he was appointed to the trust position of "Regional Administrator" on July 17, 1993.

On March 12, 2001, Defendants removed Plaintiff from his trust position and reinstated him to the career position of "Valorization Technician II," the career position he occupied prior to his appointment to a trust position. Plaintiff Orlando Mas worked in the career position of "Valorization Specialist IV" until September 1, 1995, when he was appointed to the trust position of "Regional Administrator." On March 1, 2001, Defendants removed him from his trust position and reinstated him to his previous career position of "Valorization Specialist IV."

Plaintiffs argue that they suffered reductions in pay. All of the Plaintiffs received salary increases upon appointment to trust positions, because these positions receive higher salaries. Then, after being returned to their career positions, they received salaries that corresponded to those titles, which are lower than the salaries offered by the trust positions. However, the law does not require Defendants to maintain Plaintiffs pay as it corresponded to their trust positions. The law solely orders the Defendants to reinstate Plaintiffs to positions equal or similar to those they held in the career service prior to occupying their trust positions.

Plaintiffs also make various allegations as to the Defendants' intent to remove Plaintiffs from their positions and replace them with members of their own party. The Court notes that this intent is perfectly legal and acceptable under the law, as political affiliation is a proper criteria for employment decisions involving trust employees.

The Court's analysis would also be different if the Plaintiffs had alleged that, after being reinstated to their career positions, they were deprived of duties or assigned to unreasonably inferior working conditions. This type of allegation would raise the issue of political discrimination

despite Plaintiffs' status as former trust employees. However, Plaintiffs have not made such allegations.

According to the law, the removal of Plaintiffs from their trust positions is permissible if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir.1986) (en banc) (*quoting Branti,* 445 U.S. at 518, 100 S.Ct. 1287, 63 L.Ed.2d 574). Here, the parties have demonstrated that party affiliation is an appropriate requirement for the performance of the trust position of Regional Administrator, and the Supreme Court of Puerto Rico has affirmed this analysis. Defendants have complied with Puerto Rico law by reinstating Plaintiffs to the career positions they occupied before their appointment to trust positions. Therefore, the Plaintiffs have failed to state a claim for political discrimination.

## V. CONCLUSION

The Court **GRANTS** Defendants' motion for summary judgment (**docket No. 42**) and **DISMISSES WITH PREJUDICE** all Plaintiffs' claims against Defendants in the instant case.

**IT IS SO ORDERED.**