# United States Court of Appeals
## For the First Circuit

No. 08-1921

JOHN A. UPHOFF FIGUEROA,

Plaintiff, Appellant,

v.

HECTOR ALEJANDRO; and NITZA VAZQUEZ RODRIGUEZ,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Raul Barrera Morales for the appellant.

Marie L. Cortes Cortes for the appellees.

March 4, 2010

**LYNCH**, <u>Chief Judge</u>.  A judge and a jury, between them, rejected all of the multitude of employment claims John Uphoff Figueroa, an environmental attorney, brought against his employer, the Puerto Rico Electric Power Authority (PREPA) and at least seven PREPA officials.  His basic theory, dressed in many garbs, was that the new Popular Democratic Party (PDP) regime discriminated against him by denying him a permanent appointment as the administrator of PREPA's environmental law office and by creating hostile working conditions because he was a member of the New Progressive Party (NPP).  He alleges the NPP regime then retaliated against him after he filed a federal lawsuit in 2003.  We find no merit to his claims and affirm.

We hold as a matter of law under <u>Branti</u> v. <u>Finkel</u>, 445 U.S. 507 (1980), and its progeny that the position of administrator is not within First Amendment protection because it is a policy position.  PREPA officials could have considered political affiliation when deciding whether to give Uphoff the permanent position.  Once again we remind litigants that political discrimination and retaliation claims under the First Amendment cannot be restated as claims under the Equal Protection Clause.  And we hold that Uphoff did not state a claim under the Fair Labor Standards Act (FLSA) because he did not allege he was involved in FLSA-protected activity.

Uphoff's suit, as amended in 2004, brought First Amendment and equal protection political discrimination claims; First Amendment retaliation claims; FLSA retaliation claims, 27 U.S.C. § 215(a)(3); Title VII retaliation claims, 42 U.S.C. § 2000e-3(a); civil rights conspiracy claims, 42 U.S.C. § 1985(3);[1] and state constitutional and statutory claims.[2] He sued PREPA; two of his supervisors, Hector Alejandro Navarez and Nitza Vazquez Rodriguez; and other PREPA officials.[3]

The trial court dismissed on the pleadings Uphoff's First Amendment discrimination claim that he was denied the position of administrator of the environmental law office, holding that political affiliation was a legitimate qualification for the job. Uphoff-Figueroa v. P.R. Elec. Power Auth. (Uphoff-Figueroa I), No. 03-1509, 2005 WL 3095517, at *6-11 (D.P.R. Nov. 18, 2005). The court dismissed his political discrimination and retaliation claims

---

[1] Uphoff also sued under the Fifth Amendment's Due Process Clause and the Ninth Amendment. He does not appeal the district court's dismissal of these claims. See Uphoff-Figueroa I, 2005 WL 3095517, at *12.

[2] Those claims were under Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146 et seq., and Puerto Rico Law 115, P.R. Laws Ann. tit. 29, § 194a; articles 1802 and 1803 of the Puerto Rico Code, P.R. Laws Ann. §§ 5141-42; and Article II, sections 1, 4, 6, 7, 8, and 16, of the Constitution of the Commonwealth of Puerto Rico.

[3] Those officials were Maria Mendez Rivera, Maria Torrales Hernandez, Ana Blanes Rodriguez, Hector Rosario, Ramon Rodriguez Melendez, and several John Does.

against all defendants except Vazquez and Alejandro. See id. at *12-14. It dismissed his Title VII and civil rights conspiracy against all defendants, id. at *14-16, and his FLSA claim against PREPA, dismissing PREPA from the case, Uphoff-Figueroa v. P.R. Elec. Power Auth. (Uphoff-Figueroa II), No. 09-1509, 2006 WL 1663537 (D.P.R. Jun. 7, 2006). The court allowed Uphoff's FLSA and state law claims against all individual defendants to proceed to trial, and it allowed his political discrimination and retaliation claims against Alejandro and Vazquez to proceed to trial as well.

After trial, the court granted judgment as a matter of law (JMOL), Fed. R. Civ. P. 50(a), in favor of all defendants, including Alejandro and Vazquez, on Uphoff's FLSA claims and on one of his state law claims, under Puerto Rico Law 115 (Law 115). Uphoff-Figueroa v. P.R. Elec. Power Auth. (Uphoff-Figueroa III), No. 09-1509, slip op. at 4-10 (D.P.R. Jun. 2, 2008). It also held Uphoff had not presented sufficient evidence for a jury to find the individual defendants except Alejandro and Vazquez liable on any of the remaining (state law) claims, and it dismissed those defendants from the case. Id. at 10-11.

Only Alejandro and Vazquez were left in the case. Uphoff's remaining claims against them, for political discrimination and retaliation and for violations of state law, went to a jury. A jury rejected all of Uphoff's claims against Alejandro and Vazquez. The trial court denied his new trial motion

-4-

for purported errors in the jury instructions and verdict form and his motion to amend the verdict.

Uphoff appeals the court's dismissal of his claims on the pleadings, its grants of judgment as a matter of law, the jury instructions and verdict form, and the court's denial of his motion for a new trial or to amend the verdict. We affirm.

## II.

In 1996, Uphoff started as principal environmental attorney at PREPA, a position just below the position of administrator of the environmental office. He handled the office's more complex cases. Just before the 2000 elections, he was temporarily appointed the administrator of the office.

After the PDP took power in the 2000 elections, two PDP members, defendants Hector Alejandro and Nitza Vazquez, became Uphoff's supervisors. The environmental law office was moved to Alejandro's directorate in September 2001. In June 2002, Alejandro appointed Vazquez as administrator without allowing Uphoff to apply for the permanent position; Uphoff returned to being the principal attorney. Alejandro was promoted in September 2003 and no longer supervised Uphoff or Vazquez.

Uphoff apparently claimed that Alejandro and Vazquez began a campaign to mistreat him because he was an NPP member.[4] He

_____

[4] The briefs and trial transcript do not clearly explain how all of Uphoff's factual allegations supported his legal theories. We briefly recite his core factual claims as we

testified that they excluded him from meetings, blocked him from attending professional seminars, reduced his workload and responsibilities, and maligned him to other employees, destroying his relationships with his colleagues.

Before he became Uphoff's supervisor, Alejandro's directorate often consulted the environmental law office, and Alejandro and Uphoff worked together. In early 2001, Uphoff and Alejandro already began disagreeing over how to handle several cases. Alejandro testified that Uphoff did not obtain approval before improperly awarding a $3.4 million contract, failed to timely negotiate a contract, and failed to send documents to federal authorities upon request.

Uphoff, in turn, asserted that Alejandro and Vazquez limited his autonomy at work. They ordered him to arrive promptly at the start of business, 7:30 a.m. Uphoff sometimes credited hours he worked late to morning hours on his time sheet without obtaining prior permission to do so, as PREPA regulations required. Alejandro and Vazquez ordered him to accurately report his arrival time. Once Alejandro refused to sign a time sheet, after Uphoff missed a 10:00 a.m. conference call about a federal regulatory matter but reported on his sheet that he had arrived at 7:30 a.m.

Uphoff also testified that Alejandro and Vazquez denied him vacation leave. Vazquez and Alejandro testified, however, that

understand them.

in 2002 PREPA began requiring all executive and managerial personnel to accept payment for vacation time in excess of 450 hours and that Uphoff refused to comply.

Uphoff claimed that his immediate supervisor, Nitza Vazquez, tried to isolate him. In late 2003 Vazquez prevented Uphoff's secretary from using a computer to edit Uphoff's work. Vazquez also changed the locks to the environmental law office (then on the sixth floor) for security reasons. Uphoff claimed he was the only attorney not given a key; Vazquez, Alejandro, and other employees, however, testified that no attorneys were given keys. When the office later moved to the seventh floor, all attorneys, including Uphoff, were given keys.

Uphoff testified that his position as principal attorney eroded in 2004 and 2005. As principal attorney, Uphoff was accustomed to having a larger office than the other lawyers. When the environmental law office moved floors in 2004, Uphoff tried to claim the second-largest office but was told it would become a conference room. He was left to choose among five identical, small offices designated for attorneys.

In 2005 PREPA instituted an agency-wide reclassification plan, based on recommendations by an outside consultant, which made Uphoff and all the attorneys "senior attorneys." The other attorneys received raises to match Uphoff's salary; Uphoff received no raise. Several of his colleagues received promotions even

-7-

before the reclassification plan; the defendants offered nondiscriminatory reasons for those promotions.

Uphoff attempted to tie all these incidents to political animus. He showed that Alejandro, Vazquez, and a few of the other individual defendants were PDP members but had little evidence they felt animosity toward NPP members. His secretary testified that Alejandro had told her the executive director of the agency was pressuring him to oust Uphoff. Uphoff also testified that Alejandro had said he, Alejandro, had experienced "real" discrimination when the NPP was in power.

The defendants denied that Uphoff was mistreated and that his political affiliation made any difference. Vazquez testified that she gave Uphoff many complex cases and that she and Alejandro let Uphoff attend appropriate meetings and seminars. She explained that she only stripped him of cases after he failed to execute assignments. Alejandro admitted telling Uphoff and others that Uphoff was "Machiavellic," after a particular incident in which he disapproved of what Uphoff had done. Otherwise, Alejandro, Vazquez, and other employees denied that Uphoff's supervisors undermined his work relationships.

Alejandro and Vazquez testified that tensions arose because Uphoff was insubordinate, displayed a bad attitude, and often lost his temper. They also testified that Uphoff never respected Nitza Vazquez's authority over him as the administrator,

and Uphoff did not properly complete assignments that Vazquez assigned him. Alejandro testified that Uphoff did not work well with supervisors, colleagues, or state and federal agencies.

III.

A.      The District Court Properly Dismissed Several of Uphoff's Claims under Rule 12(b)(6)

Uphoff appeals the district court's dismissal under Rule 12(b)(6) of his First Amendment discrimination claim based on his removal as administrator; his FLSA, Title VII, and civil rights conspiracy claims; and his First Amendment retaliation claim against all defendants except Alejandro and Vazquez.[5]

We review a district court's decision dismissing claims under Rule 12(b)(6) de novo, "accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiff['s] favor." Sutliffe v. Epping Sch. Dist, 584 F.3d 314, 325 (1st Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "[W]e may affirm on any basis apparent in the record." Id.

---

[5]      Uphoff does not challenge the district court's dismissal of his Fourteenth Amendment political discrimination claims against all defendants except Alejandro and Vazquez or its ruling that res judicata barred several claims.

-9-

1.       Uphoff Stated No First Amendment Political Discrimination
         Claim as to the Position of Administrator

When a position is one for which political affiliation may be considered is a question of law for the courts. Flynn v. City of Boston, 140 F.3d 42, 44 (1st Cir. 1998). Whether or not Alejandro considered political affiliation when he replaced Uphoff with Vazquez as administrator, political affiliation was a permissible consideration for that position.

The First Amendment does not bar public employers from considering political affiliation for positions for "which political affiliation is an 'appropriate requirement for . . . effective performance.'" Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (quoting Branti, 445 U.S. at 518). The Supreme Court crafted this "policymaking" or "position-of-trust" exception because political officials must be able to hire staff who will help them execute their policy goals--and so effectuate voters' wishes. Id.

Uphoff was not dismissed from, but rather was not appointed to, the permanent administrator's position. We have regularly upheld even "the dismissal on political grounds of mid- or upper-level officials or employees who are significantly connected to policy-making," either as policymakers or by working closely with policymakers. Flynn, 140 F.3d at 45. The official may be a subordinate and need not be "the ultimate decisionmaker in the agency;" "it is enough that the official [is] involved in

-10-

policy, even if only as an adviser, implementer, or spokesperson." Id. at 46 (internal citation omitted).[6]

"Actual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." Olmeda v. Ortíz-Quiñónez, 434 F.3d 62, 66 (1st Cir. 2006) (internal citation omitted).[7]

The job description says the duty of the administrator of the environmental law office is to develop and formulate PREPA's legal strategy for all environmental law issues and cases and advise the legal advisor's office about that strategy. The administrator implements PREPA's policies by directing how the agency litigates and resolves cases. Candidates must have "[e]xtensive knowledge of the general policy of the Authority."

---

[6] "Thus, we have upheld political discharges of the regional director of an administrative agency, the municipal secretary in a mayor's office, an officer in charge of human resources, a director of public relations, a superintendent of public works, a director of a city's federal programs office, and a director of a satellite office of the Massachusetts Secretary of State." Flynn, 140 F.3d at 45; see also, e.g., Ruiz-Cassillas, 415 F.3d at 132-33 (holding the second-ranking officer in a municipality's Federal Programs Division was a policymaker); Galloza, 389 F.3d at 30-32 (holding the regional administrator for the state's municipal tax collection agency was a policymaker).

[7] Puerto Rico law classifies government positions as either "career" or "trust." Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009). "Trust" employees participate in policymaking and can be hired and fired on political grounds. Id. "Career" employees must be selected and terminated based on merit, not politics. Id. How Puerto Rico law classifies a position is not dispositive on whether the position is a policymaking one under the First Amendment. See Ruiz-Casillas v. Coamacho-Morales, 415 F.3d 127, 133 (1st Cir. 2005).

-11-

Also telling is that the administrator is subject only to "general supervision" and must exercise "a high degree of . . . independent judgment."  The administrator meets with other PREPA officers and state and federal agencies, serves on relevant committees, and coordinates with other departments.  And candidates must have a law degree, a license to practice, and experience practicing environmental law.

In short, PREPA relies on the administrator to develop, understand, and execute its environmental-policy goals.  Those policy goals may change with different administrations, and political affiliation is a relevant consideration.[8]

---

[8] The mistreatment claims that proceeded to trial against Alejandro and Vazquez were improperly classified under the rubric of the Equal Protection Clause rather than the First Amendment.  An equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim and, as we have said repeatedly, should have been considered under the First Amendment.  See, e.g., Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 471 (1st Cir. 2007); Pagán v. Calderón, 448 F.3d 16, 36 (1st Cir. 2006).  We discuss the disposition of those claims later.

The Supreme Court has held that plaintiffs can bring political discrimination claims based on employment action beyond hiring and firing, but it has not precisely articulated what actions qualify. See Rutan v. Republican Party of Ill., 497 U.S. 62, 64-65 (1990). It is unclear under current law whether many incidents of mistreatment Uphoff has alleged qualify. See id.  But we need not reach that question; Uphoff does not appeal the district court's ruling that he failed to plead sufficient facts supporting political discrimination claims against the defendants except Alejandro and Vazquez, and the jury rejected his claims against Alejandro and Vazquez.

2.      Uphoff Stated No FLSA Retaliation Claim against the Defendants

The FLSA regulates certain adult employees' minimum wages and maximum hours.  See 29 U.S.C. §§ 206-07.  Uphoff's amended complaint purported to sue under § 215(a)(3), which prohibits employers from retaliating against employees who "filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA.  Plaintiffs must prove (1) that they "engaged in statutorily protected activity" and (2) that their employers afterward took "adverse employment action" against them (3) "as a reprisal for having engaged in the protected activity." Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004).

Uphoff pled no facts supporting an FLSA retaliation claim because he did not allege that he engaged in protected activity.[9] That suffices to affirm the district court's dismissal of Uphoff's FLSA claims against PREPA under Rule 12(b)(6).  Uphoff-Figueroa II, 2006 WL 1663537, at *1.[10]  For that reason, the dismissal of

_____

[9]      His original federal court complaint did not set forth a cause of action under the FLSA, and his amended complaint did not erase that problem by purporting to add a retaliation claim. In any event, as we explain below, the district court properly held that Uphoff presented no evidence showing the individual defendants except Alejandro and Vazquez were liable on any claim. And the jury found, in a special verdict in favor of Alejandro and Vazquez, that Uphoff did not suffer retaliation.

[10]      Once the FLSA claim was dismissed, the district court declined to exercise supplemental jurisdiction over the remaining state law claims against PREPA.  Uphoff-Figueroa II, 2006 WL

-13-

Uphoff's FLSA claims against all other defendants under Rule 50(a) was also appropriate. Uphoff-Figueroa III, slip op. at 3-7. Not only did Uphoff not plead such a claim, but he had no claim under the FLSA's wage and hours provisions. He pled he was lawyer for PREPA, and all of the jobs he held were within the "learned professional" exemption to the FLSA.[11] See 29 U.S.C. § 213(a)(1).

3.     The Title VII Retaliation Claims Were Properly Dismissed

Uphoff appeals the district court's dismissal of his Title VII retaliation claims against all defendants. Because plaintiffs may not bring Title VII suits against individual employees, Fantini v. Salem State Coll., 557 F.3d 22, 28-31 (1st Cir. 2009), the dismissal against all individual defendants was proper.

_____

1663537, at *3. Uphoff asserts the district court erred by doing so, but he has waived this argument by failing to develop it any further in his brief. Regardless, a district court has discretion to decline to exercise supplemental jurisdiction after dismissing "all claims over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Alvarez-Torres v. Ryder Mem. Hosp., Inc., 582 F.3d 47, 53 (1st Cir. 2009).

[11]     The FLSA exempts from its wage and hours requirements, inter alia, "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Federal regulations define "professional" to include "learned professionals" and establish a three-part test to determine whether employees are "learned professionals." See 29 C.F.R. § 541.301(a). Employees must "perform work requiring advanced knowledge." Id. § 541.301(a), (b). That advanced knowledge "must be in a field of science or learning," which "includes the traditional professions of law, medicine, theology," and the like. Id. § 541.301(a), (c). And it "must be customarily acquired by a prolonged course of specialized intellectual instruction," generally an academic degree. Id. § 541.301(a), (d).

The dismissal of Uphoff's claim against PREPA was also proper. Uphoff was required to exhaust his administrative remedies before suing in federal court, including by filing a complaint with the Equal Opportunity Employment Commission (EEOC). Frederique-Alexandre v. Dep't of Natural & Envtl. Res., 478 F.3d 433, 440 (1st Cir. 2007); Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005). Nothing in Uphoff's complaint or the record shows Uphoff ever filed any complaint with the EEOC, let alone any claim of retaliation.

4.      The Civil Rights Conspiracy Claims under 42 U.S.C. § 1985
        Were Properly Dismissed

A plaintiff suing under 42 U.S.C. § 1985(3) must allege (1) a conspiracy existed, (2) the defendants had "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws," (3) the defendants committed an "overt act in furtherance of the conspiracy," and (4) the plaintiff suffered "injury to person or property, or a deprivation of a constitutionally protected right." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). Uphoff's complaint set forth no facts alleging a conspiracy. And he only alleged political discrimination, which is not actionable under § 1985(3). Id. at 109.

5.      The Dismissal of Uphoff's First Amendment Retaliation
        Claims against All Defendants Save Alejandro and Vazquez
        Was Proper

The dismissal of Uphoff's claims against all defendants except Alejandro and Vazquez that he suffered retaliatory adverse

-15-

employment action for exercising his First Amendment right to file suit was proper. (And as for Alejandro and Vazquez, the jury found them not liable.) Plaintiffs may sue under 42 U.S.C. § 1983 if they suffered adverse employment action after exercising their First Amendment rights. Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004); see Rosado-Quiñones v. Toledo, 528 F.3d 1, 5-7 (1st Cir. 2008) (discussing the scope of public employees' right to petition). Plaintiffs must show they "engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment decision." Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008).

Assuming arguendo that Uphoff's filing his 2003 federal court complaint was protected activity, see Rosado-Quiñones, 528 F.3d at 5-7, the 2004 amended complaint's factual allegations against the other defendants failed to connect them to his filing of the 2003 complaint.

B.     The District Court Properly Granted Judgment as a Matter of Law for All Defendants on Uphoff's Law 115 Claims and for All Remaining State Law Claims against the Defendants Save Alejandro and Vazquez

The court granted JMOL on Uphoff's Law 115 claims against all the defendants and dismissed the other state law claims against all defendants except Alejandro and Vazquez. Uphoff-Figueroa III, at 4-9.

We review de novo a district court's decision granting JMOL. Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st

-16-

Cir. 2006). Taking all inferences in favor of Uphoff, we review the evidence at trial and ask whether a reasonable jury could have found these defendants liable. Id.; see also Jennings v. Jones, 587 F.3d 430, 435-39 (1st Cir. 2009). We may affirm the district court "on any independently sufficient ground" in the record. Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 75 (1st Cir. 2001) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 172 (1st Cir. 1998)).

1.      JMOL Was Properly Granted on State Law 115 Claims and Dismissal against Alejandro and Vazquez Was Otherwise Warranted

Puerto Rico Law 115 prohibits employers from discriminating against employees for "offer[ing] or attempt[ing] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29 § 194a(a). Employees must establish they engaged in activity protected under Law 115 and then suffered discrimination at work. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006); MVM, Inc. v. Rodriguez, 568 F. Supp. 2d 158, 176-77 (D.P.R. 2008).

Assuming arguendo that Law 115 applies to the filing of a federal court complaint in Puerto Rico, Uphoff presented no evidence, other than his evidence against Alejandro and Vazquez, that any of the individual defendants retaliated against him for filing the 2003 complaint.

There is a different reason to affirm the ultimate dismissal of the Law 115 claims against Alejandro and Vazquez. An identical retaliation claim went to the jury under federal law, and the jury rejected Uphoff's claim of retaliation against Alejandro and Vazquez. In the special verdict asking whether Uphoff had suffered any retaliation after filing his 2003 complaint, the jury found he had not met his burden. Thus, even if there was error in entering JMOL on the Law 115 claims, it was harmless. See Molloy v. Blanchard, 115 F.3d 86, 90 (1st Cir. 1997) (holding that any error the district court committed in granting JMOL was harmless because it did not affect the plaintiff's damages); see also, e.g., Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (holding that any error in dismissing a claim on JMOL was harmless because the jury rejected a legal theory necessary to the claim); Snyder v. Ag Trucking, Inc., 57 F.3d 484, 491 (6th Cir. 1995) (same); 11 Wright, Miller & Kane, Federal Practice and Procedure § 2888, at 479, 485 (2d ed. 1995).

2.   JMOL Was Properly Granted on Other State Law Claims against Defendants Rosario, Rodriguez, Mendez, Blanes, and Hernandez

The only claims remaining against the defendants Rosario, Rodriguez, Blanes, Mendez, and Hernandez were state law claims under Law 100, articles 1802 and 1803, and Article II of the Puerto Rican constitution. We affirm the district court's dismissal of these claims. Uphoff did not present sufficient evidence for a

reasonable jury to find these defendants liable for discriminating or retaliating against him.[12]

Uphoff presented no evidence that Rosario, PREPA's executive director, was involved in any activity Uphoff alleged was improper or even that Rosario knew Uphoff's political affiliation. The only evidence against Rosario was Uphoff's secretary's testimony that Alejandro told her the executive director was pressuring him to remove Uphoff. Even if true, without more, that evidence is insufficient to show retaliation or discrimination.

As for the remaining four defendants, Uphoff offered no evidence against any of them except Blanes, the human resources director. Uphoff merely showed that Blanes supported the PDP and administered the agency-wide reclassification plan; he presented no evidence that she made decisions about Uphoff's reclassification.

C.       The Jury Instructions and Special Verdict Form Were Not an Abuse of Discretion and Uphoff Waived Any Challenge to the Jury Verdict

Uphoff's case at trial, in the end, came down to First Amendment political discrimination (styled as equal protection)

---

[12]     Law 100 prohibits employment discrimination, including because of political affiliation. P.R. Laws Ann. tit. 29, § 146; Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 15 n.6 (1st Cir. 2001). Uphoff sued under several Puerto Rican constitutional provisions that also bar employment discrimination and retaliation. See P.R. Const. art. II, §§ 1, 4, 6, 7, 8, 16. Articles 1802 and 1803 are derivative tort statutes that depend on "the viability of the underlying employment discrimination claim." Costa-Urena, 590 F.3d at 30; see also P.R. Laws Ann. tit. 31, §§ 5141-42.

-19-

claims and retaliation claims against Alejandro and Vazquez.[13]  At the charge conference, Uphoff offered a list of eleven incidents of what he alleged were discrimination and retaliation he had suffered at their hands.[14]  He primarily appeals the district court's decision not to include that list in the jury instructions and special verdict form.

1.      Jury Instructions

To the extent Uphoff is challenging the jury instructions, his argument fails.  We review de novo preserved claims of legal error in jury instructions, but we review for abuse of discretion claimed errors in instructions' form or wording. Goodman v. Bowdoin Coll., 380 F.3d 33, 47 (1st Cir. 2004).  We ask "whether the charge in its entirety--and in the context of the evidence--presented the relevant issues to the jury fairly and adequately."  Id.

---

[13]     The jury also rejected the remaining state law claims against Alejandro and Vazquez.

[14]     The parties dispute whether Uphoff preserved his objections.  Uphoff preserved his objection to the jury instructions on political retaliation; he asked the district court to use his list of eleven incidents in that instruction.

Uphoff arguably waived his objection to how the verdict form presented his political discrimination claims.  He asked the court to include his list in question 7 but argues on appeal the court should have included his list in question 6.  Because question 6 contained materially identical language to question 7, we will assume arguendo that Uphoff preserved an objection to question 6.

Uphoff agrees he did not preserve his objection that the verdict form prevented the jury from reaching question 7 and accepts we must review it for plain error.

The court did not abuse its discretion here. Uphoff argues that the court erred when instructing the jury on his retaliation claim by including only three of the eleven items on his list: that he was not assigned duties, that work assigned to him was not complex, and that he was not invited to staff meetings. It was not necessary for the court to instruct as to the minutiae of Uphoff's case, which might well have confused the jury or overly emphasized Uphoff's version of events. Uphoff's counsel had a full opportunity to argue every detail of his mistreatment claims. The court's instructions accurately captured the law that plaintiffs must show that working conditions were "unreasonably inferior to the norm for the position." Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009) (internal quotation marks omitted), abrogated on other grounds by Estrada v. Rhode Island, No. 09-1149, 2010 WL 376978 (1st Cir. Feb. 4, 2010), and Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009).

2.      Jury Special Verdict Form

We review preserved objections to special verdict forms for abuse of discretion and objections not raised in the district court for plain error. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 53 (1st Cir. 1998). District courts have "considerable discretion about the formulation, nature, and scope of the issues" on a special verdict form. 9B Wright, Miller & Kane, supra § 2506, at 119. The form must "present the case fairly

and accurately," id., and "address all factual issues essential to judgment," Santos v. Posadas de P.R. Assocs., Inc., 452 F.3d 59, 65 (1st Cir. 2006). "[W]e examine the court's instructions and the wording of the verdict form as a whole." Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 134 (1st Cir. 2004).

Uphoff objects to questions 6 and 7 of the form. After question 5 asked if Uphoff suffered discriminatory treatment because of his political views, question 6 asked whether

> the removal of the keys to the main door of the 6th floor, the moving and change of the office to the 7th floor, and the instructions to liquidate excess vacation leave were nondiscriminatory and reasonable administrative decisions based on [PREPA's] needs to conduct its operations?

The verdict form then said that only if the jury answered "no" could it consider, in question 7, whether PREPA's nondiscriminatory reasons were pretextual.

Question 6, Uphoff argues, (1) did not reflect his real point, that these actions were discriminatory as they were applied to him; (2) should not have grouped all allegations together because the jury needed to consider each allegation separately; and (3) was incomplete and should have included his eleven points. The district court correctly instructed the jury that it had to consider whether the defendants had a valid reason other than Uphoff's political affiliation for their actions, and the court did

-22-

not abuse its discretion by concluding that question 6 fairly presented this issue.

As to the first objection, after hearing all the evidence, the jury would have understood Uphoff's interpretation of the events question 6 listed. Second, the court did not need to separately list each factual allegation for the jury to consider the core legal issue. Third, given the many instances of purported discrimination Uphoff offered at trial, the jury could have understood this list was representative and was asking the larger, important question--whether the defendants had nondiscriminatory reasons for their conduct.

Uphoff did not preserve his objection that the verdict form prevented the jury from considering whether these reasons were pretextual in question 7. The jury may well have done this in question 6 after the court's instruction to consider whether the defendants' justifications were pretextual. Uphoff cannot meet his burden to show plain error.[15]

---

[15] Uphoff also argues the jury's discrimination verdict was inconsistent because it found he was treated differently because of his political affiliation (in some undefined way) but found the defendants' actions described were nondiscriminatory. Parties must object that a jury verdict was inconsistent before the jury is dismissed to preserve that objection. E.g., Wennik v. Polygram Group Distrib., Inc., 304 F.3d 123, 130 (1st Cir. 2002). Uphoff does not dispute that he did not object before the jury was discharged, and this claim is waived.

D.      The District Court Did Not Abuse Its Discretion by Refusing to Grant a New Trial or Set Aside the Verdict

We review denials of motions for a new trial and motions to set aside a verdict for abuse of discretion and "rarely" reverse district courts.  Jennings, 587 F.3d at 436-37 & n.7 (new trial); Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 8 (1st Cir. 2001) (set aside verdict).  The trial court did not abuse its discretion.

Uphoff argues that the district court abused its discretion by not recognizing that errors at trial with the instructions, verdict form, and verdict entitled him to a new trial.  As we explained, the instructions and verdict form fairly presented the core issues.  The verdict was certainly not against the weight of the evidence.  See Jennings, 587 F.3d at 436.

We affirm the district court's entry of judgment for all defendants.