**Basilio TORRES–RIVERA, Plaintiff,**

v.

**Alejandro GARCIA–PADILLA; Grace Sylvette Lozada–Crespo, Defendants.**

**Civil No. 14–1040 (FAB)**

United States District Court, D. Puerto Rico.

Signed January 15, 2016

Fredeswin Perez-Caballero, Perez-Caballero Law Office, Caguas, PR, for Plaintiff.

Wandymar Burgos-Vargas, P.R. Department of Justice-Federal Litigation, Janitza M. Garcia-Marrero, Baerga & Quintana Law Office, San Juan, PR, for Defendant.

**OPINION AND ORDER**

BESOSA, United States District Judge.

Plaintiff Basilio Torres–Rivera ("Torres–Rivera") claims that he was terminated from his position as Chair of the Puerto Rico Industrial Commission ("PRIC") on account of his political affiliation. Before the Court are defendants' motions to dismiss plaintiff's First Amendment political discrimination claim, (Docket Nos. 32, 66). For the reasons that follow, defendants' motions are **GRANTED**.

## I. FACTUAL ALLEGATIONS

The PRIC is the Puerto Rico government agency that reviews decisions made by the Administrator of the State Insurance Fund on workers' compensation claims. (Docket No. 1 at p. 3.) On May 29, 2012, then-Governor Luis Fortuño–Burset appointed plaintiff Torres–Rivera as Chair and Commissioner of the PRIC, and the Puerto Rico Senate confirmed his appointment on June 19, 2012. *Id.* Torres–Rivera's yearly salary as Chair and Commissioner was $105,996; a Commissioner's yearly salary is $65,000. *Id.* at p. 4.

After the 2012 general elections, defendant Alejandro Garcia–Padilla became Governor of Puerto Rico. (Docket No. 1 at pp. 4–5.) On December 30, 2013, Governor Garcia–Padilla signed Law 180–2013, which increased the number of PRIC Commissioners from five to seven and expressly provided that the PRIC Chair is a position of free removal. *Id.* at p. 5. Governor Garcia–Padilla then designated defendant Grace Sylvette Lozada–Crespo ("Lozada–Crespo") as the new PRIC Chair. *Id.*

On January 14, 2014, Lozada–Crespo gave plaintiff Torres–Rivera a letter from Governor Garcia–Padilla notifying Torres–Rivera that a new PRIC Chair had been appointed, but that he could continue to hold the position of PRIC Commissioner. (Docket No. 1 at p. 5.) Defendant Lozada–Crespo then required plaintiff Torres–Rivera to surrender control of his office, documents, files, equipment, materials, funds, property, and other PRIC resources. *Id.* at pp. 5–6. Torres–Rivera initially resisted, but complied after Lozada–Crespo threatened that she would have him forcibly removed. *Id.* at p. 6.

Plaintiff Torres–Rivera is a member of the New Progressive Party ("NPP") and ran for mayor of Caguas on the NPP

ticket. (Docket No. 1 at p. 2.) Defendants Governor Garcia–Padilla and Lozada–Crespo are members of the Popular Democratic Party ("PDP"). *Id.* at p. 3.

## II. PROCEDURAL HISTORY

On January 16, 2014, two days after being removed from the position of PRIC Chair, Torres–Rivera filed suit against Governor Garcia–Padilla and Lozada–Crespo in their individual and official capacities. (Docket No. 1.) Plaintiff Torres–Rivera claims (1) that defendants removed him from the position of PRIC Chair because of his political affiliation, in violation of the First Amendment, (2) that defendants deprived him of his property interest in continuing as the PRIC Chair without just cause or prior notice, in violation of his Fifth and Fourteenth Amendment due process rights, and (3) that defendants negligently caused him emotional damage in violation of Puerto Rico law. *Id.* Torres–Rivera seeks declaratory and injunctive relief as well as compensatory and punitive damages pursuant to 42 U.S.C. §§ 1983, 1985; 28 U.S.C. §§ 2201–02; and Puerto Rico law. *Id.* Torres–Rivera also moved the Court for a temporary restraining order and a preliminary injunction. (Docket No. 3.)

The Court heard testimony from plaintiff Torres–Rivera and defendant Lozada–Crespo at a preliminary injunction hearing on January 31, 2014. (Docket No. 20.) Plaintiff clarified at the hearing that he sought a preliminary injunction on the basis of his due process claim alone. The Court granted plaintiff's request for a preliminary injunction, ordering defendants (1) to vacate Lozada–Crespo's appointment as PRIC Chair and Commissioner, (2) to reinstate Torres–Rivera as PRIC Chair and Commissioner, and (3) to refrain from removing Torres–Rivera from his position as Chair and Commissioner without due process. (Docket No. 24 at p. 20.) Defendants appealed. (Docket No. 46.)

On April 6, 2015, the First Circuit Court of Appeals found that Torres–Rivera was not entitled to federal injunctive relief for his due process claim given the adequacy of relief available in Puerto Rico Commonwealth courts. *See Torres–Rivera v. Garcia–Padilla,* 783 F.3d 42, 43, 46 (1st Cir. 2015). Accordingly, the court remanded the case with instructions "to vacate the preliminary injunction ..., to dismiss without prejudice Torres–Rivera's due process claim, to resolve Torres–Rivera's First Amendment claim, and, if dismissed, to decline pendent jurisdiction over the remaining Commonwealth claims." *Id.* at 46.

On May 7, 2015, the Court vacated the preliminary injunction, dismissed plaintiff Torres–Rivera's due process claim, and ordered the parties to file simultaneous briefs on plaintiff's First Amendment claim. (Docket No. 62.) On June 8, 2015, plaintiff Torres–Rivera submitted a brief in support of his First Amendment claim, (Docket No. 64), and defendants moved the Court to dismiss plaintiff's First Amendment claim, (Docket No. 66). In their motion, defendants reiterate the arguments they presented in their original motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket No. 32). Defendants filed that motion in February 2014, and plaintiff Torres–Rivera never opposed it. The Court ruled in May 2015 that it would decide the original motion to dismiss as unopposed. (Docket No. 63.)

## III. RULE 12(b)(6) MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a Court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Resolving a motion to dismiss

requires a two-step approach. First, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir.2012). Second, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." *Id.*

█ "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 55 (1st Cir.2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n. 14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## IV. DISCUSSION

█ Defendants raise several grounds in moving to dismiss plaintiff's First Amendment claim. Principal among them, and the one the Court addresses first, is defendants' argument that the First Amendment constitutional protection against discharge based on political affiliation does not extend to plaintiff Torres–Rivera as PRIC Chair. *See* Docket No. 32 at pp. 9–13; Docket No. 66 at pp. 3–9.

█ The First Amendment "prohibits the dismissal of a public employee solely on the basis of his or her political affiliation and beliefs." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir.2008). "One clear exception to this rule is in cases where political affiliation is an 'appropriate requirement for the effective performance of the public office involved.'" *Id.* at 25–26 (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). This exception allows elected officials to hire "top subordinates who are responsive to their policy goals." *Id.* at 26.

█ "The question of whether political affiliation is an appropriate basis for dismissal is a legal one for the court." *Mendez–Aponte v. Bonilla*, 645 F.3d 60, 65 (1st Cir.2011). The First Circuit Court of Appeals typically employs a two-pronged test to make this determination, looking first to the political nature of the employing agency and second to the political nature of the plaintiff's position. *Id.*

█ For the first prong, the court evaluates whether "the discharging agency's functions entail decision making on issues where there is room for political disagreement on goals or their implementation." *O'Connell v. Marrero–Recio*, 724 F.3d 117, 126 (1st Cir.2013) (quoting *Rosenberg v. City of Everett*, 328 F.3d 12, 18 (1st Cir. 2003)). There need not be an actual political disagreement, however; it is sufficient if the agency "handle[s] matters *potentially* subject to partisan political differences." *Galloza v. Foy*, 389 F.3d 26, 29 (1st Cir. 2004) (emphasis added) (quoting *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1258 (1st Cir.1987)).

The First Circuit Court of Appeals has set a very low bar for the first prong.[1] In *Rosenberg*, for example, the court found that a community television station administered by the city government but wholly funded by a private cable company was a

---

[1] In a handful of cases in the past decade, the First Circuit Court of Appeals skipped the first prong altogether, electing instead to apply only the second prong of the test. *See Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 429–30 (1st Cir.2010); *Lopez–Quiñones v. P.R. Nat. Guard*, 526 F.3d 23, 25–26 (1st Cir.2008); *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25–26 (1st Cir.2008); *Olmeda v. Ortiz–Quiñonez*, 434 F.3d 62, 65–66 (1st Cir.2006).

government unit that handled matters "potentially subject to partisan political differences." 328 F.3d at 14, 18. The court explained that the television station provided an important service and that "governments are held accountable for the services they provide." *Id.* at 18. "Elections often turn on the success or failure of the incumbent to provide ... services, and, as campaigns develop, the opposing sides put forth varying proposals about how best to provide services." *Id.* (quoting *O'Connor v. Steeves,* 994 F.2d 905, 910); *see Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.1985) (finding that city water department is susceptible to partisan disagreement, even though its goal is to provide service to all residents, because to hold otherwise would be to take an "unduly myopic view of the role of politics in the seemingly apolitical context of universal provision of services").

The First Circuit Court of Appeals has found that the following government agencies satisfy the first prong: the Puerto Rico Permits and Regulation Administration, *O'Connell,* 724 F.3d at 126; the Puerto Rico Public Buildings Authority, *id.;* the Puerto Rico State Department, *Mendez–Aponte,* 645 F.3d at 65; a county sheriff's department, *Hadfield v. McDonough,* 407 F.3d 11, 16 (1st Cir.2005); a municipality's federal programs division, *Ruiz–Casillas v. Camacho–Morales,* 415 F.3d 127, 132 (1st Cir.2005); the Puerto Rico Municipal Revenues Collection Center, *Galloza,* 389 F.3d at 30; a municipal public works department, *O'Connor v. Steeves,* 994 F.2d 905, 910 (1st Cir.1993); and the Puerto Rico Urban Development and Housing Corporation, *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242–43 (1st Cir. 1986).

Given the first prong's low bar, defendants clear this hurdle. The PRIC is a government agency "in charge of rendering compensation services to workers and employees." P.R. Laws Ann. tit 11, § 8(I). It has "the power to approve rules and regulations to carry out [its duties] ... and to make the proceedings before it simple and summary." *Id.* § 8(II)(w). After approval by the Governor of Puerto Rico, these rules and regulations "have the force of law." *Id.* Like the television station in *Rosenberg,* 328 F.3d at 18, the PRIC provides a service to residents. Because parties may put forth different proposals on how to provide this service in the most efficient way, and because the provision of services is a significant consideration for voters, the Court finds that the PRIC "handle[s] matters potentially subject to partisan political differences." *See Galloza,* 389 F.3d at 29.

■■ For the second prong of the test, the court examines whether "the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure." *Rosenberg,* 328 F.3d at 18. The focus is on "the inherent duties of the position under review" and not "the actual tasks performed by a present or past officeholder." *Mendez–Aponte,* 645 F.3d at 66 (quoting *Roldan–Plumey v. Cerezo–Suarez,* 115 F.3d 58, 64 (1st Cir.1997)). A "broad or open ended" job description that gives the employee "latitude to exercise discretionary judgment" typically indicates a policymaking position. *Ruiz–Casillas,* 415 F.3d at 132.

■ In this examination, the court considers the position's "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and

political leaders." *O'Connell*, 724 F.3d at 127 (quoting *O'Connor*, 994 F.2d at 910).

▮ The First Circuit Court of Appeals has "upheld political dismissals of mid- or upper-level employees where the employee 'merely represented the agency's policy positions to other entities or to the public or where important personnel functions were part of the portfolio.'" *Mendez–Aponte*, 645 F.3d at 65 (quoting *Flynn v. City of Boston*, 140 F.3d 42, 45 (1st Cir.1998)). "The official may be a subordinate and need not be 'the ultimate decisionmaker in the agency;' 'it is enough that the official [is] *involved* in policy, even if only as an adviser, implementer, or spokesperson.'" *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 429 (1st Cir.2010) (quoting *Flynn*, 140 F.3d at 46).[2]

The Court looks to Law 45, as amended,[3] for the inherent responsibilities of the position of PRIC Chair to determine whether party affiliation is an appropriate requirement for holders of the position. The PRIC Chair[4] is appointed by the Governor with the advice and consent of the Puerto Rico Senate. P.R. Laws Ann. tit.

11, § 8(I)(b)(1). The Chair is the "administrative head and nominating authority" of the PRIC, "report[s] directly to the Governor," and is responsible for "oversee[ing] the faithful compliance and uniformity of the adjudicative public policy set forth in [Law 45, the PRIC's enabling act]." *Id.* Thus, the PRIC Chair has close contact with an elected official and is in charge of representing and implementing the PRIC's policy positions. These qualities favor the finding that the PRIC is a political position. *See O'Connell*, 724 F.3d at 127; *Mendez–Aponte*, 645 F.3d at 65; *Uphoff*, 597 F.3d at 429.[5]

Furthermore, the PRIC Chair can "hire and designate personnel and officials" as well as "purchase, hire, or otherwise provide for the Commission all the materials, supplies, equipment, parts, or services he/she deems convenient for the operations of the [PRIC]." P.R. Laws Ann. tit 11, § 8(I)(b)(1). This broad discretion and significant power in personnel matters support the conclusion that the position is one in which political affiliation is an appropriate consideration. *See Mendez–*

---

**2.** The First Circuit Court of Appeals has "upheld political discharges of the regional director of an administrative agency, the municipal secretary in a mayor's office, an officer in charge of human resources, a director of public relations, a superintendent of public works, a director of a city's federal programs office, and a director of a satellite office of the Massachusetts Secretary of State." *Flynn*, 140 F.3d at 45. In contrast, the court has "disallowed political firings for a cleaning supervisor, a career employee administrative aide, and an auditor of books and records." *Id.*

**3.** All quoted language of Law 45 in this Opinion is current through its December 2013 amendments and was not added, deleted, or altered by Law 180–2013. Thus, the quoted text represents what the law was both in 2012 when plaintiff Torres–Rivera was appointed as PRIC Chair and in January 2014 when he was removed from his position as Chair.

**4.** This position is alternately translated to "Chair" and "President" in the official English translation of Law 45, as amended. *See* P.R. Laws Ann. tit 11, § 8. The original Spanish text of Law 45, as amended, consistently calls the position "Presidente." To conform with the Court's prior written opinions, and for consistency purposes, the Court refers to the position as "Chair."

**5.** Law 180–2013's amendments to Law 45 added, among other things, a provision stating that the Chair presides over the PRIC "at the will of the governor, and may be removed or replaced by the governor at any time, with or without just cause." *See* Docket No. 34–1 (certified English translation of Law 180–2013). This addition further supports the Court's conclusion that party affiliation is an appropriate requirement for the position of PRIC Chair.

*Aponte,* 645 F.3d at 65; *Ruiz–Casillas,* 415 F.3d at 132.

Finally, the PRIC Chair's "relative pay," another factor in the analysis, *see O'Connell,* 724 F.3d at 127, is significantly higher than that of a PRIC Commissioner. *See* Docket No. 1 at p. 4 (alleging that plaintiff Torres–Rivera's yearly salary as Chair and Commissioner was $105,996, whereas a Commissioner's yearly salary is $65,000).

Plaintiff Torres–Rivera's only argument as to why party affiliation is not an appropriate requirement for the position of Chair is that the position "does not respond to the public policy of any particular administration, but that of Law 45 itself." (Docket No. 64 at p. 13.) This undeveloped argument seems to suggest that the PRIC Chair is totally insulated from partisan politics because of the "quasi-judicial" functions of the PRIC. *See* P.R. Laws Ann. tit 11, § 8(I)(b)(1). In response, the Court finds that *Smith v. Martinez,* 608 Fed. Appx. 620 (10th Cir.2015), provides persuasive authority. In that case, the Tenth Circuit Court of Appeals held that the director of the New Mexico Workers Compensation Administration ("WCA") did not enjoy First Amendment protection from political discharge, reasoning as follows:

> [T]he director's involvement with some quasi-judicial functions does not negate statutory powers that require political alignment with the Governor. The director is not a judge, but an administrator. There is no question that the director's responsibilities in "effecting the purposes" of state statutes, crafting new rules and regulations, serving on an advisory council that recommends new legislation, appointing new WCA judges, suing to enforce statutory provisions, and entering interstate agreements subject to the Governor's approval, to name just a few, are strictly political functions that demand coordination with the

state's executive branch. The director has a great deal of discretion in carrying out these duties, such that he could easily frustrate the policy goals of an adverse administration.

*Smith,* 608 Fed.Appx. at 624. Similar to the director of the WCA, the PRIC Chair has broad discretion in overseeing compliance with statutory policy, making new rules and regulations, and hiring personnel. *See* P.R. Laws Ann. tit. 11, § 8(I)(b)(1). Thus even though the PRIC Chair heads an agency that performs quasi-judicial functions, the Chair's administrative, discretionary, and policy-oriented duties nonetheless indicate that political affiliation is an appropriate qualification for the position. Defendants have therefore satisfied the second prong of the analysis.

In conclusion, plaintiff Torres–Rivera's allegation that he was removed from his position as PRIC Chair based on his political affiliation fails to state a First Amendment claim upon which relief can be granted because holders of the position of PRIC Chair do not enjoy federal First Amendment protection from political discharge. Accordingly, the Court **GRANTS** defendants' motions to dismiss plaintiff's First Amendment claim, and the claim is **DISMISSED WITH PREJUDICE.**

Having dismissed the First Amendment claim, the Court need not address defendants' other bases for dismissal, including their claim of qualified immunity. *See* Docket Nos. 32, 66.

■ All of plaintiff Torres–Rivera's federal claims have been dismissed; only his Puerto Rico law claims remain. A court may decline to exercise supplemental jurisdiction over state law claims when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). In deciding whether to de-

cline supplemental jurisdiction, the court considers a variety of factors, including fairness, judicial economy, convenience, and comity. *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir.2015). After consideration of these factors, and pursuant to the instruction from the First Circuit Court of Appeals, *see Torres–Rivera*, 783 F.3d at 46–47, the Court declines to retain jurisdiction and **DISMISSES WITHOUT PREJUDICE** plaintiff's Commonwealth claims.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** defendants' motions to dismiss plaintiff's First Amendment political discrimination claim, (Docket Nos. 32, 66), and declines to exercise supplemental jurisdiction over plaintiff's Puerto Rico law claims. Accordingly, plaintiff's First Amendment claim is **DISMISSED WITH PREJUDICE**, and plaintiff's Puerto Rico law claims are **DISMISSED WITHOUT PREJUDICE**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**